**Ralph D'ARGE, Appellant (Defendant),**

v.

**Laverne DAVIS, Appellee (Plaintiff).**

**No. 85–93.**

Supreme Court of Wyoming.

Dec. 18, 1985.

George L. Zimmers, Laramie, for appellant.

Michael D. Zwickl, Casper, for appellee.

Before THOMAS, C.J., BROWN and CARDINE, JJ., ROSE, J. (Retired), and ROONEY, J. (Retired).

BROWN, Justice.

Laverne Davis, appellee, brought suit against Ralph D'Arge, appellant, as co-guarantor of a loan made by Wyoming National Bank to Whole-Cel Manufacturing, Inc. This appeal is from the trial court's judgment in favor of appellee in the amount of $11,097.45.

We affirm.

Appellant raises the following issue:

---

"What is the appropriate value to give property which was taken by fellow board of directors agent; should the value subscribed be the value of the property at the time of the taking or conversion or should it be the value at the time of the disposal of the property?"

Appellee states the issue as follows: "Is it within the province of the trial court to determine the credibility of defendant's witnesses?"

In 1981, the parties to this action, along with several other individuals, invested in an oil field equipment company known as Whole-Cel Manufacturing, Inc. Appellant acquired a seventeen percent interest in the company. When Whole-Cel began to experience financial difficulties in March of 1982, the company was forced to obtain two loans from Wyoming National Bank, one for $40,000 and the other for $25,000.

As security for the $40,000 loan, appellee pledged certain personal assets. In return, several of the original investors, including appellant, signed an instrument entitled "Guarantee for Repayment of a Note Secured by Monies of Laverne Davis" in which they agreed to repay appellee in the event of default by Whole-Cel.

As security for the $25,000 loan and any future extensions of credit made by the bank to Whole-Cel, several of the same shareholders, again including appellant, signed individual documents entitled "Continuing Guarantee." Again the documents served as a guarantee by the shareholders that in the event of default by Whole-Cel, the indebtedness would be promptly paid. Appellant's guarantee covered loans to Whole-Cel of up to $30,000.

In August of 1982, as Whole-Cel's financial problems worsened and the company proved unable to repay the loans when due, the bank demanded payment from the company's guarantors. Appellee agreed to satisfy the indebtedness in full in return for an assignment of the bank's rights under the continuing guarantees. When appellee sought reimbursement on the basis of the assignment and the Guarantee for Repayment, appellant refused to pay and appellee brought suit. Appellant counterclaimed alleging that he had been induced to sign the guarantees by appellee's misrepresentations and fraudulent conduct. He alleged further that if the court found that appellee was entitled to reimbursement, the amount awarded should be reduced by the amount of the company's assets already appropriated by appellee. The latter claim referred to the removal by an agent of appellee of approximately 5,737 bags of circulation material from the company plant to a field near Casper. A portion of the material was later sold and the proceeds went to appellee. The remainder was left in the field.

Directing the court's attention to appellant's answer and affidavit, in which he admitted signing and agreeing to the guarantees, appellee moved for summary judgment. The trial court granted a partial summary judgment with respect to the Guarantee for Repayment and awarded appellee $7,982.94 (seventeen percent of the $40,000, plus interest). The court set the matter of appellant's liability under the Continuing Guarantee for trial.

Upon hearing all of the evidence, the trial court found that there was not sufficient evidence of misrepresentation or fraud and that appellee was entitled to a pro rata contribution from appellant based on his percentage of ownership in the company. However, the court also found that appellant was entitled to a set-off in the amount of the assets of the company already received by appellee.

The record reflects that evidence as to the value of those assets came from two sources: the testimony of Warren Schroefel, the buyer of the circulation material, and the deposition of Carl Engvall, a former employee of Whole-Cel. Both witnesses testified on behalf of appellant. Mr. Schroefel testified that he purchased 1,000 bags of circulation material located in a field near Casper at a price of one dollar per bag. However, he testified further that, in his opinion, the material was only worth fifty cents per bag at the time of

purchase. Mr. Engvall testified in his deposition that the 5,737 bags of material taken from the plant to the field were invoiced out at $27,659.90 at the time of removal. Other than the invoice itself, which indicated that the $27,659.90 did not represent the value of only the circulation material but included certain machinery as well, there was no other evidence as to the value of the circulation material.

After considering all of the evidence, the trial court concluded that the proper standard for assessing the amount of set-off to which appellant was entitled was the amount of the company's assets already received by appellee. In arriving at the appropriate value for those assets, the trial court relied on the actual price paid by Mr. Schroefel. As stated above, appellant now claims that the trial court erred in assessing the value of those assets on the basis of the one-dollar-per-bag purchase rather than on the value of the material at the time it was taken from the plant to the field. We cannot agree.

The general rule is that the measure of damages for the loss or destruction of personal property is its market value at the time of loss; however that rule is not inflexible. *Rocky Mountain Packing Co. v. Branney*, Wyo., 393 P.2d 131 (1964). The value of property is a question of fact. *Stearns v. Stearns*, 4 Conn.App. 323, 494 A.2d 595 (App.1985); and *Payne v. Holiday Towers, Inc.*, 283 S.C. 210, 321 S.E.2d 179 (1984). There is no universal standard for determining the value of property and, therefore, the question is one left to the determination of the trier of fact based on the facts and circumstances of each case. 22 Am.Jur.2d Damages § 324, p. 424 (1965).

When reviewing cases on appeal, we presume the trial court's findings of fact to be correct and we will not disturb such findings unless clearly erroneous or contrary to the great weight of the evidence. *Matter of Abas*, Wyo., 701 P.2d 1153 (1985). In the present case, the trial court considered the conflicting testimony of two witnesses testifying for appellant as to the value of the circulation material.

As indicated above, the first witness, Mr. Schroefel, testified that he paid one dollar per bag but that in his estimate the material was only worth fifty cents per bag at the time he purchased it. The second witness, Mr. Engvall, testified by deposition that 5,737 bags of the material were invoiced out at $27,659.90. He did not attribute a precise value to the material itself and the record reflects that the $27,659.90 quoted by Mr. Engvall and appearing on the invoice included the value of machinery as well as the value of the circulation material. There was no evidence presented that a market for the material existed at the time it was taken from the plant to the field. Nor was there evidence presented that the material had ever sold at the price reflected on the invoice and in Mr. Engvall's deposition. There was, therefore, no credible evidence presented as to the value of the material other than the testimony of Mr. Schroefel.

Upon weighing the evidence that was presented, the trial court concluded that the value of the material for purposes of assessing the set-off amount was one dollar per bag. The value of the product was introduced by appellant in support of his set-off. It was appellant's burden to persuade the trial court what the value of this product was. He failed to prove to the satisfaction of the court that it was worth more than a dollar a bag.

We cannot say that the trial court's conclusion was clearly erroneous or contrary to the great weight of the evidence.

Affirmed.