**M & M WELDING, INC., Appellant (Defendant and Third-Party Plaintiff),**

**v.**

**Richard PAVLICEK and Glenn Deming, (Third-Party Defendants),**

**v.**

**FIRST WYOMING BANK—CASPER, Appellee (Plaintiff).**

No. 85–111.

Supreme Court of Wyoming.

Jan. 28, 1986.

William L. Miller, Holly Brown, and John R. Hursh, of Central Wyoming Law Associates, P.C., Riverton, for appellant.

J. Scott Burnworth and Cameron S. Walker of Schwartz, Bon, McCrary & Walker, Casper, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT, and ROONEY (Retired), JJ.

BROWN, Justice.

This appeal involves an action by appellee First Wyoming Bank—Casper (the bank) to collect on a revolving credit note executed by appellant M & M Welding, Inc. (M & M). Trial to the court resulted in a judgment for the bank. M & M appeals and states the following issues:

"1. Mr. Redding was not authorized to borrow money on behalf of M & M Welding, Inc.

"2. The note in this case was not properly executed, cannot bind M & M Welding, Inc. and is invalid on its face as against M & M Welding."

Appellee disagrees with appellant's statement of the issues and rewords them thusly:

"1. Was there sufficient evidence presented at trial, when viewed in a light most favorable to the appellee, which would support the Court's finding that Larry L. Redding had authority to bind M & M Welding, Inc. to the loan, and execute a promissory note on its behalf?

"2. Was there sufficient evidence produced at trial, when viewed in a light most favorable to the appellee, which would support the Court's finding that the promissory note in this case was binding upon M & M Welding, Inc.?"

M & M, an oilfield fabrication business, was started in 1974 by Edward Mudge, his wife Edna F. Mudge, Robert Mudge, and his wife Sybil Mudge. On July 31, 1981, the Mudges entered into an agreement to sell M & M to Larry Redding for one million dollars. Under this agreement, Redding was to make a down payment of $175,000, and pay the balance over a period of years. Redding made his down payment under the agreement on September 2, 1981, and was placed in control of the business.

After acquiring control of the business, Redding elected himself president and director of M & M. To conduct business Redding approached the bank to obtain a $100,000 line of credit in the form of a revolving credit note. Before approving the loan, the bank required Redding to submit financial statements, asset lists, and a list of accounts receivable. The bank also required Redding to submit a certified copy of the corporate resolution authorizing Redding to borrow money on behalf of M & M. Such was provided and the loan was approved. On September 25, 1981, Mr. Redding executed the note on behalf of M & M.

Redding failed to make his payments to the Mudges under the sales agreement, and the Mudges repossessed M & M. The note executed by Redding subsequently went into default. The bank instituted action to collect on the loan. The trial court rendered judgment in favor of the bank finding M & M liable for the note executed by Redding.

I

In its first issue, appellant claims Redding had no authority to borrow money on behalf of M & M. In its decision letter the trial court found that Redding had actual authority to incur the note in question, thereby obligating M & M: "I find that actual authority existed, by implication if not necessarily expressly, and that clearly there was apparent authority, to bind the

defendant corporation to the bank. * * * " 1

We think the facts attendant in the case amply support such conclusion by the court. A special meeting of M & M's board of directors was held on August 18, 1981, wherein Redding was elected chairman and president. The minutes of the meeting reflect that the board authorized any officer to borrow up to $200,000:

" * * *

"Discussion was held regarding the amount of money that any officer could loan and the amount they could borrow. It appeared that with officer compensation being less and the elimination of the pension and profit sharing plans that up to $400,000 could be loaned to Larry L. Redding and/or Redding Investments, Inc. It appeared that based on the income statement provided by the Mudges for June 30, 1981 and for December 31, 1980 that sufficient bonuses and/or dividends could be paid in future years to repay the loans.

"Upon motion duly made, seconded and unanimously carried any officer was authorized to borrow up to $200,000 and loan to Redding and/or Redding Investments, Inc. a total of $400,000.

"Upon motion duly made, seconded and unanimously carried the signing of these minutes constitutes full ratification thereof and waiver of notice of the meeting by the signatories."

On September 14, 1981, the board of directors met again. The certified copy of corporate resolutions reflects that Redding was again given the express authority to borrow money for the corporation:

"RESOLVED, that the above Bank, is hereby authorized to pay any such orders and also to receive the same for credit of or in payment from the payee or any other holder without inquiry as to the circumstances of issue or the disposition of the proceeds even if drawn to the individual order of any signing officer or tendered in payment of his individual obligation.

"RESOLVED, that *Larry L. Redding, President be * * * authorized to borrow from time to time on behalf of this Corporation from the above Bank sums of money for such period or periods of time, and upon such terms, rates of interest and amounts as may to them in their discretion seem advisable, and to execute notes or agreements in the forms required by said Bank in the name of the Corporation for the payment of any sums so borrowed:* [Emphasis added.]

"That said officers are hereby authorized to pledge or mortgage any of the bonds, stocks or other securities, bills receivable, warehouse receipts or other property real or personal of the Corporation, for the purpose of securing the payment of any monies so borrowed; to endorse said securities and/or to issue the necessary powers of attorney and to execute loan, pledge or liability agreements in the forms required by said Bank in connection with the same.

\* \* \* \* \* \*

"RESOLVED, that the foregoing powers and authority will continue until written notice of revocation has been received by the above Bank, and the above Bank shall have full right to rely on all the foregoing resolutions until it has received such written notice of revocation.

---

1. See comment, "Inherent Authority of a Corporate President in Wyoming", 5 Wyo. Law Journal 93 (1950):
    "Inherent authority has been defined as, 'An authority possessed without it being derived from another.' The authority of the corporate president is conventionally divided into four classes which are as follows: (1) Express authority; (2) Implied authority; (3) Apparent authority; (4) Inherent authority. Express authority is that which is conferred by the by-laws and resolutions of the board of directors. Implied authority is that which is inferred from the express authority. Apparent authority is that which arises from the conduct of the corporation or that which the corporation allows the officer to assume without objection. Inherent authority is that which arises merely by virtue of his office."

"RESOLVED, that the Secretary of this Corporation be and he hereby is authorized to certify to the above Bank, the foregoing resolutions and that the provisions thereof are in conformity with the charter and By-Laws of this Corporation. "I FURTHER CERTIFY, that there is no provision in the charter or By-Laws of said Corporation limiting the power of the Board of Directors to pass the foregoing resolutions and that the same are in conformity with the provisions of said charter and By-Laws.

"\* \* \* \*

"s/*Larry L. Redding President and Director*"

The bank requested and received this information before the loan to Redding on behalf of M & M was approved. Appellant contends, nevertheless, that Redding was not in actual control of the business when he executed the note and therefore had no authority to bind M & M. But the facts reveal that both Robert Mudge and Redding agreed it was their intent that Redding would be in control of M & M after September 2, 1981, when Redding took possession of the business, equipment, and all business records. The Mudges resigned as officers and directors of M & M on September 4, 1981. Counsel for M & M stipulated that Redding was in control at least by September 25, 1981, although the facts indicate an earlier date.

■ We have often stated our applicable standard of review. On appeal we accept the evidence of the prevailing party as true, leaving out entirely the consideration of evidence presented in conflict therewith, giving every favorable inference which may fairly and reasonably be drawn from the evidence of the prevailing party. *Shanor v. Engineering, Inc. of Wyoming,* Wyo., 705 P.2d 858 (1985); and Matter of Abas, Wyo., 701 P.2d 1153 (1985). The trial court's findings of fact are presumed correct, and such findings will not be disturbed on appeal unless such findings are inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence. *Doenz v. Garber,* Wyo., 665 P.2d 932 (1983); and *Seeley v. Estate of Seeley,* Wyo., 627 P.2d 1357 (1981).

■ As pointed out above, there is ample evidence which supports the trial court's conclusion that Redding was clothed with express authority to borrow money on behalf of M & M.

II

The note in question was signed as follows: "M & M Welding, Inc., Larry L. Redding." In its second issue, appellant contends that the note was improperly executed and was therefore invalid on its face under §§ 34–21–340 and 34–21–341, W.S. 1977. Those two statutes read:

"§ 34–21–340. Signature by authorized representative.

"(a) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

"(b) An authorized representative who signs his own name to an instrument:

"(i) Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

"(ii) Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

"(c) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

"§ 34–21–341. Unauthorized signatures.

"(a) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.

"(b) Any unauthorized signature may be ratified for all purposes of this article. Such ratification does not of itself affect any rights of the person ratifying against the actual signer."

We have already held that Redding had authority to borrow money on behalf of M & M. Therefore, we need only determine if the note was properly executed.

Section 34–21–340(a) above states that the authority of an agent or representative "may be established as in other cases of representation." This statute is identical to Uniform Commercial Code (U.L.A.) § 3–403. The official comment to § 3–403 states in part:

"The power to sign for another may be an express authority, or it may be implied in law or in fact, or it may rest merely upon apparent authority. It may be established as in other cases of representation, and when relevant parol evidence is admissible to prove or deny it."

■ The law is clear that when a signing is ambiguous, parol evidence is admissible to prove the intent of the parties to establish the character of the signing. Anderson, Uniform Commercial Code § 3–403:34, p. 129 (3rd ed. 1984). See also, *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463 (1980). When one signs his name after a corporate name, the signing is deemed ambiguous. Anderson, Uniform Commercial Code, § 3–403:35. That is precisely how the note at issue here was signed.

■ Indeed the trial court in its decision letter stated, " * * * In at least one instance (the note) there was sufficient ambiguity to warrant parol [evidence] which clearly tied the bank both to money obligation and to the commitment of its security. * * *" We think the trial court was correct in its conclusion. Parol evidence then clearly established, as set forth infra, that Redding was acting in a representative capacity for M & M.

Having found no reversible error, the judgment of the trial court is affirmed in all respects.

Affirmed.