**O'S GOLD SEED COMPANY,**
Appellant (Plaintiff),

v.

**UNITED AGRI–PRODUCTS FINAN-
CIAL SERVICES, INC.,**
Appellee (Defendant).

No. 88–12.

Supreme Court of Wyoming.

Sept. 23, 1988.

Eric M. Alden, of Jones, Jones, Vines & Hunkins, Wheatland, for appellant.

Frank J. Jones, Wheatland, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This case is before the Court for a second time. In the prior appeal, *United Agri–Products Financial Services, Inc. v. O's Gold Seed Company*, 733 P.2d 252 (Wyo.1987), we held, in reversing the district court, that the perfected security interest of United Agri–Products Financial Services, Inc. (UAP) in certain corn seed held by an insolvent retailer was superior to the consignor's interest retained by O's Gold Seed Company (O's Gold). Since O's Gold had previously retaken possession of the corn seed and apparently shipped it back to the company headquarters in Iowa, the hearing upon remand was limited to the issue of damages resulting from the wrongful taking. O's Gold, as appellant in the instant case, contests the district court's award of damages, interest, and costs to appellee UAP.

We modify the award of interest and costs and affirm the judgment as modified.

O's Gold states the issues as follows:

I. The Findings of Fact and Conclusions of Law contained in the Trial

Court's Order are not adequate to meet the standards of Rule 52 W.R.C.P.

II. The Trial Court's decision is not supported by the evidence produced in this matter.

III. The pre-judgment interest granted in the Trial Court's Order is not allowed by law.

IV. The costs awarded in the Order were not supported by any claim of record.

Much of the factual background of this case is described in *United Agri–Products Financial Services, Inc.*, 733 P.2d 252. In order to clarify the issues presented in this second appeal, however, a certain amount of repetition is unavoidable.

Beginning in 1984, O's Gold, an Iowa corporation, delivered corn seed to Rocky Mountain Feed & Grain, Inc. (Rocky Mountain), a retailer of agricultural supplies in Platte County, Wyoming, for sale to area ranchers and farmers. Pursuant to the agreement between O's Gold and Rocky Mountain, the seed was provided to Rocky Mountain on a consignment basis under which Rocky Mountain would pay O's Gold at the end of the season for the seed sold and would return to O's Gold any unsold seed, receiving a commission for the seed that had been sold. This procedure worked satisfactorily the first year.

In December 1984, Rocky Mountain obtained financing for its business operations from UAP and, in turn, granted UAP a security interest in its inventory and accounts receivable. UAP perfected its security interest in accordance with the applicable statutes. O's Gold subsequently delivered seed to Rocky Mountain for the 1985 season. In June 1985, Rocky Mountain was forced to close its business due to financial difficulties. Upon closing, Rocky Mountain had in its possession 375 bags of corn seed that it had received from O's Gold.

In July 1985, O's Gold initiated a replevin action against Rocky Mountain and UAP, seeking a determination that it was entitled to possession of the seed, an order directing that the seed be relinquished to it, and damages. On September 3, 1985, O's Gold posted a replevin bond, and the district court ordered that the seed be delivered to O's Gold. After a bench trial, the district court entered its judgment and order on May 19, 1986, finding that O's Gold was entitled to the seed free and clear of any claims by Rocky Mountain or UAP. Upon the appeal of UAP, we reversed, holding that, although the seed was held by Rocky Mountain on a consignment basis, it was nevertheless subject to UAP's security interest, because the consignment did not fall within any of the exceptions found in W.S. 34–21–243(c) of Wyoming's enactment of the Uniform Commercial Code. *United Agri–Products Financial Services, Inc.*, 733 P.2d 252.

Upon remand, and pursuant to a motion by UAP, the district court set a hearing to determine the amount of damages UAP was entitled to as a result of the wrongful taking. The hearing was held on July 31, 1987, and, after issuing revised findings of fact and conclusions of law, the district court entered judgment in favor of UAP in the amount of $19,972.50, plus interest in the amount of $4,492.44 and costs of $161.75, for a total judgment of $24,626.69. The district court calculated the damages on the basis of O's Gold's customer price list for the seed minus the commission that would have been paid to Rocky Mountain if the seed had been sold.

■ O's Gold's first contention is that the findings and conclusions made by the district court are inadequate. At the outset of the damages hearing, counsel for O's Gold requested that the court make findings of fact and conclusions of law as provided by W.R.C.P. 52(a).[1] After the hear-

---

1. W.R.C.P. 52(a) provides in relevant part:
   *General and special findings by court.*— Upon the trial of questions of fact by the court, or with an advisory jury, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant,

unless one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing its

ing, the district court issued the following revised findings and conclusions:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Rocky Mountain Seed and Grain, Inc., a Wyoming corporation purchased seed corn from O's Gold Seed Company, an Iowa corporation during the crop year of 1983.[2]

2. The corn was shipped to Rocky Mountain Seed and Grain, freight paid, by O's Gold and was billed out according to a customer price list (Exhibit A).

3. The normal business practice of O's Gold is to bill out seed corn at the prices listed in the customer price list, Exhibit A.

4. Upon the completion of the crop of the growing season the unsold seed corn is in the regular course of business, returned to O's Gold, freight pre-paid.

5. The customers' account is then credited for the returned seed corn and the customer billed for the amount of seed corn sold, less the commission to be paid the sales agent according to the sales agent commission schedule.

6. On September 3, 1985, O's Gold took possession of the seed corn located in Wheatland, Wyoming as follows:

50 bags of GB 95
86 bags of 6880
15 bags of 2230
75 bags of 2310
40 bags of GB115
109 bags of 2330

7. If the seed corn had been returned in the regular course of business, Rocky Mountain would have been credited for the full list price of the seed corn.

8. The seed corn had a value as of September 3, 1985 as set out in the list price (Exhibit A) less the commission which would have been paid had the corn been sold.

9. United[ ] Agri[–]Products Financial Services are entitled to pre-judgment interest on a liquidated claim, defined as a claim which is readily computable by basic mathematical calculations, *Holst vs. Guynn*, 696 P[.]2d 632, (Wyo[.] 1985).

10. United Agri–Products Financial Services, Inc. had a secured interest.

11. The property was wrongfully taken by O's Gold Seed Company on September 3, 1985. *United Agri–Products Financial Services, Inc.[ ] vs. O's Gold Seed Company*, 733 P.2d[ ] 252 (Wyo. 198[7]).

12. The value of the property at the time of the wrongful taking was $19,972.50. Defendant's Exhibit A (O's Gold price list, less commission).

## CONCLUSIONS OF LAW

1. United Agri–Products Financial Services, Inc. had the right to the seed corn. *United Agri–Products Financial Services[,] Inc.[ ] vs. O's Gold Seed Company*, [s]upra.

2. The value of the seed corn as of September 23, 1987 is as follows:

| | |
|---|---|
| 50 bags of GB 95 | $ 1,445.00 |
| 86 bags of 6880 | 5,495.40 |
| 15 bags of 2230 | 958.50 |
| 75 bags of 2310 | 4,492.50 |
| 40 bags of GB115 | 916.00 |
| 109 bags of 2330 | 6,965.10 |
| TOTAL | $19,972.50 |

3. United Agri–Products Financial Services, Inc. is entitled to damages in the amount of $19,972.50 plus interest of $3994.50 (computed at the rate of 10% per annum from the date of taking through September 3, 1987, plus accruing interest from September 3, 1987 and costs of $161.75 for a total judgment of $24,128.75 plus accruing interest after September 3, 1987.)[3]

This Court has said that findings pursuant to a W.R.C.P. 52(a) request must be

special findings of fact separately from its conclusions of law * * *.

**2.** The district court's recitation of the year 1983 undoubtedly represents a clerical error, because the events at issue in this case occurred in 1985.

**3.** The figures for prejudgment interest and for total judgment were increased in the final judgment to reflect the additional prejudgment interest that accrued prior to the entry of final judgment.

sufficient to indicate the factual basis for the decision on the contested matters. *Lebsack v. Town of Torrington,* 698 P.2d 1141, reh. denied and case remanded 703 P.2d 338, order amended 707 P.2d 1389 (Wyo.1985). We have further stated:

> [T]he requested findings need not be set forth in elaborate detail but need only be clear, specific and complete in concise language informing the appellate court of the underlying bases for the trial court's decision.

*Whitefoot v. Hanover Insurance Company,* 561 P.2d 717, 720 (Wyo.1977).

The findings by the district court are more than sufficient to apprise this Court of the factual basis for the damage award. The district court set out the method of computation used in arriving at a figure for the seed (O's Gold's list price less commission) and then broke it down lot by lot to arrive at a total figure. The method used by the district court for assessing interest is similarly well delineated. The findings, however, do not indicate a factual basis for the award of costs. This omission will be discussed in connection with O's Gold's fourth issue, infra. Other than with respect to the award of costs, we conclude that these findings meet the requirements we have established for W.R.C.P. 52(a) findings.

We turn now to the related question, and O's Gold's second issue, of whether the district court's findings are adequately supported by the evidence. O's Gold contends that the district court's decision that on September 3, 1985, the corn seed had a value equal to the list price of the corn seed less the sales agent's commission lacks evidentiary support. We disagree.

The standard of review applied by this Court when the sufficiency of the evidence is at issue is well settled. We assume that the evidence of the prevailing party is true, leaving out of consideration the evidence presented by the other party in conflict therewith, and giving every favorable inference to the evidence of the successful party that may fairly and reasonably be drawn from it. *Harmon v. Town of Afton,* 745 P.2d 889 (Wyo.1987); *M & M Welding,*

*Inc. v. Pavlicek,* 713 P.2d 236 (Wyo.1986). The findings of the trial court are presumed to be correct and will not be disturbed by this Court unless they are clearly erroneous, inconsistent with the evidence, or contrary to the great weight of the evidence. *Eddy v. First Wyoming Bank, N.A.—Lander,* 750 P.2d 294 (Wyo.1988); *Pancratz Company, Inc. v. Kloefkorn– Ballard Construction/Development, Inc.,* 720 P.2d 906 (Wyo.1986).

The measure of damages for the loss, conversion, or destruction of personal property is the fair market value of the property at the time of loss, or, when there is no ascertainable market value, the actual economic value to the owner. *Broyles v. Broyles,* 711 P.2d 1119 (Wyo.1985); *D'Arge v. Davis,* 710 P.2d 830 (Wyo.1985). See also *Shikany v. Salt Creek Transp. Co.,* 48 Wyo. 190, 45 P.2d 645 (1935). Valuation of property is a question of fact, and there is no universal standard for such a determination. Thus, the question is left to the trier of fact to be decided on the basis of the facts and circumstances of each case. *D'Arge,* 710 P.2d 830. We have said that damages must be susceptible of ascertainment with a reasonable degree of certainty, *Reiman Construction Company v. Jerry Hiller Company,* 709 P.2d 1271 (Wyo. 1985); *Cates v. Barb,* 650 P.2d 1159 (Wyo. 1982), and that a court may not speculate or conjecture in awarding damages. *Broyles,* 711 P.2d 1119; *State Highway Commission of Wyoming v. Brasel & Sims Construction Co., Inc.,* 688 P.2d 871 (Wyo.1984). We further observed in *Douglas Reservoirs Water Users Association v. Cross,* 569 P.2d 1280, 1284 (Wyo.1977), quoted in *Reiman Construction Company,* 709 P.2d at 1277, that:

> [W]hile damages may not be calculable with absolute certainty, they should be susceptible of ascertainment with a reasonable degree of certainty and if there is evidence from which a reasonable estimate of money damages may be made that is sufficient, the primary objective being to determine the amount of loss, applying whatever rule is best suited to that purpose.

The district court in this case determined that the value of the corn seed at the time of the wrongful taking was list price (O's Gold's) minus the commission that Rocky Mountain would have received if the seed had been sold. In making this determination, the district court relied upon the value assigned to the seed by O's Gold in its customer price list, which was introduced into evidence. In addition, there was testimony at the hearing that the wholesale value of the seed was approximately $22,-000 and that the customer list price represented what Rocky Mountain would have had to pay O's Gold if the seed had been sold, with the commission payment being refunded later. Testimony at the hearing, as supported by the sales agent commission schedule, also indicated that, had Rocky Mountain sold the remaining 375 bags of seed, its commission would have been approximately six dollars per bag. While there also was testimony that little or no market for the seed existed at the time of year when the wrongful taking occurred, the district court, in a post-hearing letter to counsel, aptly observed:

[I]t appeared to me that the only evidence of the value of the seed corn was the price lists submitted by the Plaintiff and I still believe that to be the case. The Plaintiff would have had me [arbitrarily] set a low value on the seed corn without any basis other than a guess.

Accepting the evidence of UAP as true and disregarding O's Gold's evidence in conflict therewith, as we must in accordance with our standard of review, we conclude that there is evidence to support the district court's award of damages and that the award was calculated with a reasonable degree of certainty. Although the evidence was not overwhelming, it was sufficient, and we cannot say the district court's findings were clearly erroneous. Thus, O's Gold's challenge to the sufficiency of the evidence must fail.

O's Gold next contends that the district court erred in awarding prejudgment interest to UAP at a rate exceeding that which is allowed by law. We agree with O's Gold on this issue, and UAP has conceded the point on appeal.

■ Prejudgment interest is recoverable in Wyoming on liquidated claims but not on unliquidated claims, with a liquidated claim being defined as one that is readily computable by basic mathematical calculation. *Holst v. Guynn*, 696 P.2d 632 (Wyo.1985); *Brasel & Sims Construction Co., Inc.*, 688 P.2d 871. We have established that, in the absence of a contractual provision to the contrary, W.S. 40–14–106(e) is applicable in determining the rate of prejudgment interest to be awarded. *Holst*, 696 P.2d 632; *Rissler & McMurry Company v. Atlantic Richfield Company*, 559 P.2d 25 (Wyo. 1977). W.S. 40–14–106(e) provides:

If there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of seven percent (7%) per annum.

In the instant case, the district court correctly determined that UAP's claim, which is readily computable, is a liquidated claim. The district court, however, then awarded UAP prejudgment interest at the rate of ten percent per annum from the date of the taking (September 3, 1985) through December 3, 1987, the date the judgment was entered. By using this improper rate of interest, the district court awarded UAP prejudgment interest in the amount of $4,492.44 upon the $19,972.50 judgment. According to our calculations, using the seven percent per annum rate, the correct award of prejudgment interest should have been $3,145.67. We need not reverse the district court, however, in order to correct this error.

In *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, School District No. 25, Fremont County, Wyoming*, 681 P.2d 1326, 1333 (Wyo.1984), we said:

[W]here the judgment does not result from passion or prejudice and any error may be ascertained by mathematical calculations, the supreme court may modify without reversing.

See also *Adel v. Parkhurst*, 681 P.2d 886 (Wyo.1984). The quoted rule is applicable in this situation. Accordingly, we affirm the award of prejudgment interest and or-

der that it be modified to reflect the proper amount as set forth above.

 As its final issue, O's Gold contends that UAP was not entitled to the award of $161.75 for costs absent any claim or evidence of record to support the award. We agree.

In its revised findings of fact and conclusions of law, and in the final judgment, the district court determined that UAP was entitled to an award of costs in the amount of $161.75. No explanation is given for the basis of this figure. As O's Gold correctly points out, the record is devoid of any evidence of or even a claim by UAP for costs.

Costs were unknown at common law, and therefore they are recoverable and may be awarded only when authorized by statute or rule. *Bi–Rite Package, Inc. v. District Court of Ninth Judicial District of Fremont County*, 735 P.2d 709 (Wyo.1987). In Wyoming, an award of costs to the prevailing party is authorized by W.R.C.P. 54(d) and W.S. 1–14–124.[4] *State v. Dieringer*, 708 P.2d 1 (Wyo.1985). In *Bi–Rite Package, Inc.*, 735 P.2d at 712, we said that costs may be awarded only "in amounts supported by evidence as having been incurred and reasonable." In *Dieringer*, we disallowed deposition costs awarded by the trial court, because the appellees in that case did not establish on the record that the claimed costs were reasonably necessary for trial preparation. In that case, we held that, under the circumstances, we could not sustain the district court's exercise of discretion in awarding such costs.

In the case at bar, where there is total absence of any record evidence of costs incurred by UAP or of even a claim or petition for costs, we hold that it was an abuse of discretion for the district court to award these costs to UAP. The judgment of the district court is modified to delete the award of $161.75 in costs.

The judgment in this case, as modified to reflect the correct rate of prejudgment interest and to delete the award of costs, now totals $23,118.17. The judgment of the district court is affirmed but remanded with directions to vacate the award of $24,-626.69 and to enter judgment in favor of UAP for $23,118.17.

---

**4.** UAP also refers us to W.S. 1–34–112 as providing a basis for the award of costs in this action. That section provided for the award of costs to a defendant in a replevin action if a judgment was entered against the plaintiff. W.S. 1–34–112 was repealed effective May 22, 1987. The law in effect on the date of judgment determines the right to costs. 20 Am.Jur.2d, Costs § 7 (1965). Judgment in this case was entered on December 3, 1987; therefore, W.S. 1–34–112 has no bearing on UAP's right to costs.