**INDEPENDENT PRODUCERS MARKETING CORP., formerly known as The Crude Company, Appellant (Defendant),**

v.

**Kristie R. COBB, Appellee (Plaintiff).**

**No. 86–30.**

Supreme Court of Wyoming.

July 21, 1986.

---

Keith P. Tyler and Carl J. Hildebrand, Casper, for appellant. R. Stanley Lowe, Morris G. Gray and D. Thomas Kidd filed an amicus curiae brief for Rocky Mountain Oil and Gas Ass'n.

Michael D. Zwickl, Casper, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

The sole issue presented in this appeal is whether an interest penalty can be assessed against a payor who withheld royalty payments on oil or gas that was produced prior to the effective date of the Royalty Payment Act.

In 1982, the Wyoming legislature adopted an act to create §§ 30–5–301 through 30–5–303, W.S.1977, which was entitled "Payment for Oil and Gas Production Interest," Session Laws of Wyoming, 1982, ch. 27. The Act required that lessees, operators, or their assignees pay oil and gas royalties to royalty interest owners in a timely fashion. Thus, § 30–5–301(a), W.S. 1977, provides:

> "The proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in the state of Wyoming shall be paid to all persons legally entitled thereto, except as hereinafter provided, commencing not later than six (6) months after the first day of the month following the date of first sale and thereafter not later than sixty (60) days after the end of the calendar month within which subsequent production is sold, unless other periods or arrangements for the first and subsequent payments are provided for in a valid contract with the person or persons entitled to such proceeds. Payment shall be made directly to the person or persons entitled thereto by the lessee or operator or by any party who assumes such payment obligation under any legal arrangement."

Section 30–5–302 requires that the payor hold late payments in escrow for the benefit of the royalty interest owner, while § 30–5–303 creates an interest penalty of eighteen percent for a violation of § 30–5–301(a), supra, and provides for an award of attorney's fees if proceedings are brought pursuant to the statute. The effective date of the Act was June 1, 1982. Session Laws of Wyoming, 1982, ch. 27.

### FACTS

The parties stipulated to the following facts. From January 1, 1980, until January 1, 1982, appellee Kristie Cobb owned a five percent overriding royalty interest in a federal oil and gas lease located in Crook County. During this period, appellant Independent Producers Marketing Corporation (IPMC) purchased all of the oil which was produced from the lease and became liable to Ms. Cobb for her overriding royalty on this production, a sum of $174,846.29. IPMC did not pay Ms. Cobb until April 23, 1984, four years after it first became liable to her, and almost two years after the

legislature passed the Royalty Payment Act.

On June 6, 1985, Ms. Cobb filed a complaint against IPMC in the district court seeking $43,888.81 in damages and unspecified attorney's fees under § 30–5–303, supra. She reached the damage figure by adding the six-month withholding period of § 30–5–301(a), supra, to the effective date of the Act and applying the interest penalty of eighteen percent from that date (December 1, 1982) to the date she was finally paid (April 23, 1984).

After the parties stipulated to the facts, Ms. Cobb moved for summary judgment on grounds that the Act entitled her to the interest penalty as a matter of law, even though the royalty arose from production that occurred prior to the effective date of the Act. To show legislative intent that supported her interpretation of the Act, she attached affidavits by State Senator Thomas Stroock, the Act's sponsor, and Joseph Meyer of the Legislative Service Office, one of the Act's draftsmen. Senator Stroock stated in his affidavit:

"It was my intent that the interest penalty as provided in Wyoming Statute Section 30–5–303 would attach to the proceeds derived from the sale of production from any well producing oil, gas, or related hydrocarbons, then being held by oil and gas operators as of the effective date of the law, which was June 1, 1982."

The district court held a hearing on the motion and concluded that Ms. Cobb was entitled to summary judgment on both the interest penalty and the attorney's fees. IPMC filed a timely motion under Rule 59(e), W.R.C.P., to alter or amend the judgment. The motion was supported by the affidavits of attorneys R. Stanley Lowe and Morris Gray, and accountant Phyllis Bean, who had all represented oil companies during the legislative proceedings which led to the bill's passage. The content of these affidavits is typified by the following excerpt from Mr. Lowe's affidavit:

"It was my understanding that the language in § 30–5–301(a) specifically assured producers such as Eighty-Eight Oil Company, whom I represent, that they would not have to treat proceeds from sales of production occurring prior to June 1, 1982, as being subject to the statute in the same manner as post June 1, 1982, proceeds from the sales of production."

The district court refused to consider the Lowe and Gray affidavits because no excuse was offered for the failure to submit them during the summary judgment proceedings. The court denied IPMC's motion to alter or amend the judgment, and IPMC has appealed.

## LEGISLATIVE HISTORY BY AFFIDAVIT

■ The district court could not have considered the affidavits submitted by IPMC even if they had been submitted prior to the summary judgment hearing. The court erred to the extent that it relied upon the affidavits of Senator Stroock and Mr. Meyer. Affidavits by legislators or other persons involved in the enactment of a statute are not a proper source of legislative history.

"In construing a statute the courts refuse to consider testimony about the intent of the legislature by members of the legislature which enacted it. The courts evidently wish to avoid having to pass upon the credibility of legislators and ex-legislators." 2A N. Singer, Sutherland Statutory Construction, § 48.16 at 338 (rev. ed. 1984) (citing *Waterman Steamship Corp. v. United States*, 381 U.S. 252, 85 S.Ct. 1389, 1398, 14 L.Ed.2d 370 (1965)).

This error does not prevent us from affirming the judgment, however, because

"if the trial court's judgment is sustainable on any theory, it will not be disturbed on appeal." *DeWald v. State*, Wyo., 719 P.2d 643, 650–651 (1986). See also *Litzenberger v. Merge*, Wyo., 698 P.2d 1152, 1153 (1985).

The interpretation of the Royalty Payment Act is purely a question of law. It does

not matter how the district court arrived at its interpretation if it was correct.

## RETROACTIVITY

"Wyoming has long followed the general rule that retrospective application of a statute to events occurring before [its] enactment * * * is not favored." *Johnson v. Safeway Stores, Inc.,* Wyo., 568 P.2d 908, 914 (1977).

" '[A] provision will operate prospectively only, unless the words employed show a clear intention that it should have a retrospective effect.' " *Id.* (quoting *Mestas v. Diamond Coal & Coke Company,* 12 Wyo. 414, 76 P. 567, 569 (1904)). See also *Adkins v. Sky Blue, Inc.,* Wyo., 701 P.2d 549 (1985), and *McClellan v. Tottenhoff,* Wyo., 666 P.2d 408 (1983).

IPMC contends that the district court retroactively applied the interest penalty provision of the Royalty Payment Act and that this was error because the Act contained no explicit language permitting retroactive application. While we agree with IPMC that the Act contains no explicit retroactivity language and, therefore, should only be applied prospectively, we do not necessarily accept IPMC's premise that the district court applied the Act retroactively in this case.

"A statute operates prospectively when the precipitating event for the application of the statute occurs after the effective date of the statute, even though the precipitating event had its origin in a situation existing prior to the enactment of the statute." *Aetna Life Insurance Company v. Washington Life and Disability Insurance Guaranty Association,* 83 Wash.2d 523, 520 P.2d 162, 170 (1974).

Section 30–5–301(a), W.S.1977, supra, states:

"The proceeds derived from the sale of production * * * shall be paid * * * not later than six (6) months after the first day of the month following the date of first sale * * *."

The sanction for a violation of § 30–5–301(a), supra, is found in § 30–5–303(a), supra:

"Any lessee or operator, purchaser or other party legally responsible for payment who violates the provisions of this article is liable * * * for the unpaid amount of such proceeds, plus interest at the rate of eighteen percent (18%) per annum on the unpaid principal balance *from the due date* specified in W.S. 30–5–301(a)." (Emphasis added.)

Ms. Cobb contends it was the failure to pay for more than six months after the effective date of the Act that triggered the penalty. Thus, she claims that appellee had six months in which to pay without penalty. IPMC maintains that the production of oil or gas is the event which precipitates the Act's interest penalty. Therefore, if the penalty is imposed on pre-Act production, it is applied retroactively. The argument of IPMC is flawed because production is not the event which triggers the penalty. Instead, the sanction is precipitated by the payor's failure to pay the proceeds of production at any time more than six months after the first day of the first month after the date of first sale.[1] The term "production" is used at the beginning of § 30–5–301(a) only to describe the kind of proceeds whose nonpayment will trigger the interest penalty. The Act is not applied retroactively just because the proceeds happen to be generated by production that occurred prior to the Act's effective date.

"A statute is not necessarily retroactive because it draws on antecedent facts for its operation." *Belco Petroleum Corporation v. State Board of Equalization,* Wyo., 587 P.2d 204, 210 (1978).

In this case, the first sale of oil took place in early 1980 and the six-month grace

---

1. In its amicus brief, the Rocky Mountain Oil and Gas Association, which supports IPMC's position, admits that

"the precipitating event for an assessment of the eighteen percent (18%) interest penalty was *a failure to pay persons legally entitled to receive payment,* commencing not later than six (6) months after the first day of the month following the date of the first sale * * *."

period expired before that year was over. The precipitating event, nonpayment, first occurred in 1980, and occurred each day thereafter until IPMC finally paid Ms. Cobb in 1984. If the district court had extended the interest penalty back to six months after the first day of nonpayment in late 1980, it would have been applying the statute retroactively because it would have been relying on a precipitating event that occurred prior to the effective date of the statute.

██ But the district court did not do this. Intending to avoid a retroactive application of the statute, the court ignored each day of IPMC's nonpayment prior to the effective date of the statute. The court treated the effective date of the Act, June 1, 1982, as if it was the first day when payment was due. Nonpayment was excused for a six-month grace period after that date, and as a result, December 1, 1982, became the first day of unexcused nonpayment; it became the precipitating event. Because the district court relied on a precipitating event that occurred after the effective date of the statute, it applied the statute prospectively.

The district court's application of the Royalty Payment Act in this case is consistent with the legislature's obvious intent to stop oil producers from retaining other people's money for their own use. IPMC had the free use of Ms. Cobb's money from early 1980 until April 23, 1984. When the Act became law on June 1, 1982, IPMC could have avoided the interest penalty by searching its records and paying Ms. Cobb and all the other interest owners to whom it owed money. In fact, the court gave IPMC the benefit of the six-month grace period of § 30–5–301(a), supra, and only imposed the penalty to the extent that IPMC held the proceeds after December 1, 1982.

██ If we accepted IPMC's retroactivity argument, we would reach an absurd re-

sult. A producer who began production on June 1, 1982, and withheld payments from that date until April 23, 1984, would pay a penalty while a payor like IPMC who withheld the proceeds from early 1980 until April 23, 1984, would pay no penalty. The district court's holding, which would penalize each of these producers equally for their nonpayment after the effective date of the Act, makes good sense.

Affirmed.

URBIGKIT, Justice, concurring.

I concur. However, I do not agree that available source material on legislative intent should necessarily be proscribed. Theories of legislative intent abound and have been variously avoided or implicitly considered in the jurisprudence history of this state. Cf. this writer's dissent to the order denying reconsideration in *State, Board of Land Commissioners v. Lonesome Fox Corporation*, Wyo., 714 P.2d 783 (1986), with the opinion in the original case, *State, Board of Land Commissioners v. Lonesome Fox Corporation*, Wyo., 707 P.2d 167 (1985), and this writer's dissent to the order on rehearing in *Matter of Adoption of BGD*, Wyo., 719 P.2d 1373 (1986).

I would not find either legislative history review or statutory construction philosophy intrinsically invoked in the affirmance of this case. However, attention to the subject in an early case would be more than justified, for direction not only to the bar and bench, but to the legislature in particular, due to an obvious need for improved legislative records and history to afford the possibility of further substance and weight in this court's interpretative effort.