**M.C. (Red) JOHNSON,**
**Appellant (Plaintiff),**

v.

**George S. ANDERSON, an individual, George S. Anderson, as general partner in a partnership known as Puma Petroleum Company, Puma Petroleum Company, a limited partnership and successors and assigns of the general partner and limited partnership presently known as John Doe, Appellees (Defendants).**

No. 88–208.

Supreme Court of Wyoming.

Jan. 20, 1989.

Dan R. Price II of Morgan, Price and Arp, Gillette, and T.R. Rice of Lance Astrella Law Office, Denver, Colo., for appellant.

David C. Uchner, Cheyenne, and Peter A. Bjork and Stephen M. Thompson of Poulson, Odell & Peterson, Denver, Colo., for appellees.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and GUTHRIE, J., Retired.

GOLDEN, Justice.

Appellant M.C. "Red" Johnson (Johnson) challenges an order granting summary judgment to appellees George S. Anderson, individually, and as general partner in Puma Petroleum Company, a limited partnership (Anderson and Puma I respectively), and Anderson Minerals, Ltd., as a John Doe (Anderson, Ltd.). Johnson argues summary judgment was improperly granted on his claim that he was wrongfully denied an express contractual right to payments from overriding oil and gas royalties or alternatively, that Anderson, Puma I, and others were unjustly enriched at his expense. After considering this record carefully, we hold that summary judgment was appropriately granted on both issues.

Affirmed.

### FACTS

#### Johnson's Employment Contract With Puma I

Underlying this dispute is a complicated series of business relationships and trans-

actions. Johnson first became involved with appellees when, at the invitation of Anderson, he joined the newly formed Puma Petroleum Company in June 1980. Puma I was organized as a Wyoming limited partnership with Anderson as the sole general partner. The company was originally set up with an initial lifespan of roughly three and one-half years ending on December 31, 1983. Johnson was hired by Puma I under the terms of a written employment contract (Contract) between himself and Anderson dated June 6, 1980. The first page of the Contract contains a section entitled "Tenure and Nature of Johnson's Work" and, under subparagraph "a." of that section, the Contract states "Johnson shall for a period from June 1, 1980, to December 31, 1983, diligently devote his best efforts to the business and affairs of [Puma I] * * *." Under section 2 of the Contract Johnson was to receive $110,000 per year salary and additional compensation including a share of the following oil and gas interests:

2.b.(1) Anderson agrees to share equally with Johnson in the remaining overriding interest as provided for under the Partnership Agreement, after deductions of overriding royalty interests assigned to other employees or associates of [Puma I], but will strive to maintain the overriding royalty interest to be assigned to Johnson be not less than 2% proportionately reduced to the interest acquired by [Puma I]. Such overriding royalty interest to be applicable to leasehold interest acquired *during period of Anderson's and Johnson's association* as provided under the terms of this agreement.

2.b.(2) Johnson to share at his option equally with Anderson, covering the General Partner's right to buy up to a ¹⁄₁₆th working interest, proportionately reduced to the interest acquired in the prospect by [Puma I], at cost, under the terms and conditions set forth in the Partnership Agreement. Such option to purchase to be applicable to prospects developed during the period of association between Anderson and Johnson, as covered under this agreement. The working interest purchase option will cover the remaining working interest available, after deductions, if any, to other employees or associates of [Puma I], but Johnson will share equally with Anderson in this option to purchase the remaining working interests.

The Contract also stated that it was binding upon both parties' successors and assigns and that it was a "Colorado contract."

The Puma I partnership agreement referenced in the Contract, along with an amendment to that partnership agreement, was filed with the Wyoming Secretary of State on July 18, 1980. The original Puma I partnership agreement at paragraph II.A provided that Anderson, as general partner, would receive overriding royalties "[o]n any mineral leasehold interest acquisition made by [Puma I] * * *." The amendment to the original agreement contained two substitute provisions for paragraph II.A in the original partnership agreement, which amended provisions provided:

1. On any mineral leasehold interest acquisition, ~~including acquisition of producing properties made by the Partnership~~, the General Partner shall receive an overriding royalty equal to 6.25% of 8/8ths, proportionately reduced to the interest acquired by [Puma I] if that interest is less than a full working interest.
2. In the event [Puma I] acquires properties other than mineral leasehold interests, as described in subparagraph 1 above, the General Partner shall receive 5% of the interest acquired by [Puma I] after payout which shall include all costs of acquisition and costs of maintaining and operating a property during payout. The provisions of this subparagraph 2 shall not apply to property or oil field equipment purchased by [Puma I] in the course of [Puma I]'s drilling, completing, operating and producing oil and gas wells in which [Puma I] has a working interest.

In his deposition, Anderson testified that the original Puma I partnership agreement was amended, and the amended text that allowed the general partner the right to

share in overrides on leases acquired by Puma I was stricken as shown above. This was done to prevent the general partner from acquiring an interest in overriding royalties on property acquired by Puma I, which was capable of producing paying quantities of oil or gas at the time Puma I acquired it. Affidavits of the limited partners in Puma I echo this explanation.

Johnson's primary obligation under the Contract was to act as a petroleum geologist for Puma I. He was to develop and generate potential oil and gas prospects and prospects for farmout agreements on the same. Johnson screened a number of wells for Puma I during his employment and some of the wells were drilled based upon his recommendation. Between 1980 and December 31, 1983, Johnson received assignments of overriding royalties under the Puma I partnership agreement and the employment contract between Puma I and Johnson. (See subsection entitled "Leases in which Johnson Claims an Interest" below)

### Other Business Organizations Involved in the Case

On December 21, 1983, Anderson and others formed another company named Puma Petroleum Company II (Puma II) and registered it as a limited partnership in the state of Colorado. Puma II was organized as an exploration company with a lifespan of two years ending December 31, 1985. Puma I and Puma II had the same general and limited partners, but Puma II had no employees. On January 1, 1984, Anderson, Johnson, and others also reorganized a Wyoming corporation named Puma Operating Corporation (POC)[1] to operate the properties of Puma I and Puma II. The partnership agreement for Puma II, like the partnership agreement for Puma I, contained provisions for the payment of 6.25% of the overriding royalty interests acquired by Puma II. These royalties were payable alternatively to Anderson as general partner or to POC, if a management

contract between Puma II and POC was then in effect. Such a management agreement was in effect during 1984 and 1985 providing that the overriding royalties would be paid to POC. Johnson stipulated in open court that he signed the corporate minutes adopting a POC resolution that ratified and approved the management agreement between POC and Puma II.

Sometime before January 1, 1984, the employees of Puma I, including Anderson, were orally informed that, as of that date, they would become employees of POC. Apparently, this change did not affect the substance of the work Johnson was doing for Anderson. Johnson did not have any written agreement concerning his employment with POC or any right to receive a share of overriding royalties. Similarly, Anderson had no written agreement with POC under which he could share in any royalty interests acquired by POC. Johnson, however, received an increased annual cash salary of $120,000 per year from POC.

In early 1984, the treasurer of POC informed Anderson that the transfer of overriding royalties to POC under the Puma II partnership agreement and the POC management agreement would create an excess of passive income that might endanger POC's subchapter "S" election for federal income tax purposes. Based on this information, Anderson decided to resume the old scheme under which the overrides were assigned to Anderson and Johnson.

In December 1985, the Board of Directors of POC voted to reduce the salaries of the officers of the corporation, including those received by Johnson and Anderson, to $84,000. Johnson did not agree with this reduction and resigned effective December 1985. Puma I, Puma II, and POC continued to do business as three distinct entities until January 1, 1986, when Puma II conveyed all its assets to Puma I and cancelled its Colorado Limited Partnership Certificate.

1. POC was originally created under the name Puma Corporation in May 1983 and had been inactive until December 1983 when no-par value common stock was issued to Anderson, Johnson, and others.

### Overriding Royalties in Which Johnson Claims an Interest

In his complaint, Johnson claimed a right to overriding royalties in three different leases: (1) U.S.A. lease no. W–59239 (Dry Gulch Field and McCreery Ranch Field); (2) U.S.A. lease no. W–91370 (Little Powder River a/k/a Scarper Drive); and (3) U.S.A. lease no. W–86694, Puma lease no. WY–87, (Little Powder River a/k/a Scarper Drive). During the course of the litigation Johnson dropped his claim to lease no. W–86694. Anderson and Puma I's interests in the two leases that remain in contention developed as stated below.

### Lease No. W–59239

From 1980 through December 31, 1983, Johnson was entitled to assignments of overriding royalties from Puma I and Anderson under the Contract and the Puma I partnership agreement.[2] On January 1, 1983, Puma I completed a farmout agreement[3] with Shell Oil Company on lease no. W–59239; wells drilled on five eighty-acre tracts within that lease resulted in five producing oil wells. Assignments of overriding royalty interests in those wells were distributed to Anderson and Johnson equally under the Contract and the Puma I partnership agreement in 1984.

On August 14, 1984, Puma II entered into another farmout agreement for lease no. W–59239 with Shell Western E & P, a Shell Oil Company subsidiary, which resulted in the completion of a single producing oil well on another eighty-acre tract; Puma II assigned overriding royalties on that well to Anderson and Johnson equally; on November 19, 1985, the undeveloped remainder of Shell Western E & P's interest in lease no. W–59239 was acquired by Puma II. Puma II had acquired the undeveloped portion of the lease through a July 1985 competitive sale for a purchase price of $1.3 million; at the time of the competitive sale, lease no. W–59239 was held by production from several of the wells drilled under the 1983 and 1984 farmout agreements. By the spring of 1986, Puma I had acquired all of the oil and gas interests previously held by Puma II; and on March 20, 1986, Puma I, as successor in interest to Puma II's interest in the remainder of lease no. W–59239, assigned overriding royalty interests on a portion of that interest to Anderson Ltd., and some POC employees. Johnson did not share in this assignment and now focuses his claim of entitlement most keenly on this particular assignment. On January 5, 1987, the overriding royalties assigned to Anderson Ltd., and POC employees were reassigned to Puma I after Anderson and the POC employees determined that they had not been entitled to receive overriding royalties on lease acreage acquired as a part of a production purchase. The relevant portion of lease no. W–59239 was not developed and produced no income during the time the overriding royalties were assigned to Anderson Ltd., and the employees of POC.

### Lease No. W–91370

POC acquired lease no. W–91370 on March 1, 1985, as the successful applicant in a Bureau of Land Management drawing. As the initial lessee under that lease, POC conveyed the lease to Total Petroleum Corporation, on October 23, 1987, reserving a 6.25 percent overriding royalty interest. POC's overriding royalty was later converted into 40 percent working interest in the Hawkpoint Federal Well no. 41–30 under the terms of a farmout agreement between POC and Total Petroleum Corporation. No portion of POC's original overriding royalty interest in lease no. W–91370 was ever assigned to Anderson or Johnson.

---

**2.** Anderson Ltd., a Colorado limited partnership composed of Anderson and members of his family, received assignments of all the overriding royalty interests Anderson received from Puma I and Puma II.

**3.** In a farmout agreement the owner of an oil and gas lease contracts to assign an interest in the lease to another person in return for development of the lease. Under the assignment, transfer of the relevant interest in the lease to the assignee is completed if the contemplated development occurs. In this way the assignee is said to "earn" that portion of the lease by performing the required development. 8 H. Williams and C. Meyers, Oil and Gas Law, Manual of Oil and Gas Terms at 342 (1987).

### Statement of the Case

Johnson filed a complaint seeking declaratory judgment, breach of contract, specific performance, and unjust enrichment against Anderson and Puma I on October 22, 1987. The complaint specifically alleged that Anderson and Puma I had a duty to Johnson to assign to him the overriding royalty interests set out above in conformity with the terms of the Contract and that he should be allowed to recover for unjust enrichment. Anderson and Puma I answered generally denying Johnson's allegations and raising several affirmative defenses.

Discovery progressed until April 14, 1988, when the district court held a hearing on Anderson's motions to compel discovery and for a continuance. During that hearing Johnson was allowed to amend his pleadings to add Anderson Ltd., as a defendant; Anderson and Puma I were allowed to amend their pleadings to include an affirmative defense of the statute of frauds and to represent an answer for Anderson Ltd., as assigns of Anderson.

On May 13, 1988, Anderson, Puma I, and apparently Anderson Ltd., as a John Doe, filed a motion for summary judgment on Johnson's complaint accompanied by supporting materials. Johnson filed a brief in opposition to the motion on May 24, 1988, and on May 25, 1988, the district court held another hearing on the motion for summary judgment and Johnson's motion to add POC as a defendant. The district court denied the motion to add POC as a defendant and took the summary judgment motion under advisement. On May 31, 1988, by telephone conference, the district court informed the parties that it would grant appellees' motion for summary judgment. A general order to that effect was filed on June 15, 1988, and this appeal followed.

### ANALYSIS

Summary judgment is proper only when based upon the dual findings that no genuine issue of material fact is presented and that judgment for the prevailing party was proper as a matter of law. *Teton Plumbing and Heating, Inc. v. Board of Trust-*ees, *Laramie County School District Number One,* 763 P.2d 843, 846 (Wyo. 1988). We review this summary judgment appeal under W.R.C.P. 56, in accordance with our well-established standard of review, which we need not recite. See *Petersen v. Campbell County Memorial Hospital District,* 760 P.2d 992, 994 (Wyo.1988).

### Contract Claims

The district court granted summary judgment for Anderson, Puma I, and Anderson Ltd., based on a three-part analysis. First, the district court ruled that the Contract was unambiguous and expired by its terms, as a matter of law, on December 31, 1983, and that any rights Johnson had to receive overriding royalties under that contract expired with it. Second, the district court reasoned that, in light of his first legal conclusion, Johnson's only remaining avenue of recovery had to be premised upon his assertion that some subsequent oral or implied contract to assign the overriding royalties existed and was enforceable. The district court noted that such an oral or implied contract would be unenforceable unless it could be taken out of the statute of frauds because an overriding royalty is a nonpossessory interest in real property, and the alleged contract would have to be in writing absent an exception. See W.S. 1–23–105(a)(v) (June 1988 Repl.); and *Connaghan v. Eighty-Eight Oil Company,* 750 P.2d 1321, 1324 (Wyo.1988) (overriding royalty is a nonpossessory interest in real property). The district court found that the alleged oral or implied contract could not pass that requirement and that no applicable exception was available to rescue the alleged agreement from the statute of frauds. Third, the district court addressed Johnson's intimations that Anderson was hiding behind all of the companies and corporations involved in the case and was somehow personally responsible to Johnson for the overrides at issue. The district court dispensed with that theory quickly, noting that even under a liberal reading of Johnson's complaint there were no allegations that Anderson had used his interests in Puma I,

Puma II, POC, and Anderson Ltd., as shells for an alter ego that defrauded Johnson out of the overriding royalties.

■ At the outset, we hold that summary judgment for Anderson, Puma I, and Anderson Ltd., on lease no. W–91730 was proper based solely on Johnson's failure to put forth any evidence refuting the movants' showing that POC was the only entity that ever owned an overriding royalty in that lease.

■ Concerning lease no. W–59239, our review of this record leads us to agree with the district court that the language from the Contract concerning Johnson's term of employment with Puma I was clear and unambiguous and that Johnson's legal rights under the Contract expired on December 31, 1983. Unlike the district court, however, we do not find it necessary to address the alleged existence of an oral or implied contract.

We may affirm an order granting summary judgment on any legal basis appearing in the record. *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 706 (Wyo.1987). After a careful review of Johnson's complaint, considered liberally as a notice pleading and under the standard of review applicable in this appeal, we cannot discern an allegation that some oral or implied contract was created between the parties.[4] The complaint appears to allege only that, under the language of the Contract,

---

4. Johnson's complaint reads as follows:

1. Plaintiff is an individual who resides at 14320 Berry Turn, Golden, Colorado 80401.

2. Defendant George S. Anderson is an individual and general partner of the defendant limited partnership known as Puma Petroleum Company (the "partnership"). Defendant Anderson conducts business personally and the partnership has offices at 407 Lincoln Tower, 1860 Lincoln Street, Denver, Colorado 80295.

3. This court has jurisdiction because all defendants are doing business in Campbell County, Wyoming and some or all of the interests complained about are a result of leaseholds in Campbell County.

4. On June 6, 1980, plaintiff and defendant Anderson entered into an employment agreement for the benefit of the partnership. Plaintiff was to perform certain specified tasks for compensation. Attached to this complaint as Exhibit A is a copy of the Agreement. (The "Agreement").

5. In addition to the monetary compensations specified in paragraph 2a of the Agreement, defendant Anderson agreed to share equally with plaintiff certain overriding royalty interests. Under the terms of the Agreement in paragraph 2b, plaintiff was entitled to one-half of defendant Anderson's overriding royalty interest in oil and gas properties obtained by the partnership during the term of plaintiff's association with defendant Anderson and the partnership.

6. During the course of plaintiff's association with defendant Anderson and the partnership, which ceased on or about December 31, 1985, plaintiff was assigned some but not all of the overriding royalty interests due him under the terms of the Agreement. Plaintiff has made demand upon defendant Anderson and the partnership for the conveyance of the overriding royalty interests to which he is entitled, but these requests have been refused.

7. Attached to this Complaint as exhibit B is a list of the oil and gas leaseholds in which plaintiff believes he is entitled to the overriding royalty interest. The attached list may not be exhaustive because plaintiff does not have access to the records of defendant Anderson and the partnership.

FIRST CLAIM FOR RELIEF (DECLARATORY JUDGMENT)

8. Plaintiff incorporates paragraphs 1 through 7 of the complaint as if set forth fully in this first claim.

9. W.R.C.P. Rule 57 and W.S. § 1–37–101 et seq. provide that upon proper petition district courts have the power to declare the rights, status and other legal relations between the parties.

10. An actual controversy exists between plaintiff and the defendant as to whether plaintiff is entitled to certain overriding royalty interests in certain oil and gas properties obtained, acquired or otherwise made known to the partnership during the time period of June 6, 1980, through December 31, 1985. Plaintiff seeks a declaration of his rights in this respect.

SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT)

11. Plaintiff incorporates paragraph 1 through 10 of the Complaint as if set forth fully in this second claim.

12. Defendants have failed to convey to plaintiff those overriding royalty interests referenced in this Complaint and as a result are in breach of the contract.

THIRD CLAIM FOR RELIEF (UNJUST ENRICHMENT)

13. Plaintiff incorporates paragraphs 1 through 12 of the Complaint as if set forth fully in this third claim.

14. The retention of the overriding royalty interest in the proceeds by defendants under these circumstances outlined in this Complaint constitutes an unjust enrichment which as a remedy necessitates the imposition of a

Johnson maintained a legal right to receive assignments of overriding royalties from Anderson. Anderson, Puma I, and Anderson Ltd., carried their initial summary judgment burden to put forth evidence showing that the Contract was unambiguous and that Johnson's rights to receive assignments of overriding royalties from Anderson expired with the Contract on December 31, 1983. Johnson attempted to refute that showing with copies of the Contract, the Puma I partnership agreement, the POC management agreement, documents identifying the leases in which he claimed a right to assignment of an overriding royalty, and Johnson's own affidavit. None of these materials raise a genuine issue of material fact concerning alleged ambiguity in the Contract term governing the length of Johnson's employment with Puma I. That conclusion, coupled with Johnson's failure to properly plead the existence of some distinct oral or implied contract with POC vesting rights to assignments of the overriding royalties, leaves Johnson without viable claims for declaratory judgment, breach of contract, or specific performance. Summary judgment for all appellees was proper on that basis.

### Unjust Enrichment

■ Johnson's only remaining claim is the one asserting his right to recover for

constructive trust for the benefit of plaintiff, and an accounting of overriding royalties received, plus other appropriate relief.
FOURTH CLAIM FOR RELIEF (SPECIFIC PERFORMANCE)
15. Plaintiff incorporates paragraphs 1 through 14 of the Complaint as if set forth fully in this fourth claim.
16. Defendants have failed to perform their obligations under the agreement set forth in the Complaint. Plaintiff seeks the court under W.S. § 1–32–401 et seq. to order the defendants to specifically perform their obligations under the agreement which is to assign to the plaintiff his share of the overriding royalties.
Plaintiff specifically retains the right to amend this Complaint after discovery to include claims including but not limited to possible claims of tortious breach of contract, intentional interference with a contract, conversion and violation of state security laws.
WHEREFORE plaintiff prays for the following relief:

unjust enrichment. The doctrine of unjust enrichment, or quantum meruit, provides for recovery of damages on a contract implied in equity. *Pancratz Company, Inc. v. Kloefkorn–Ballard Construction/Development, Inc.,* 720 P.2d 906, 908–09 (Wyo.1986). It is actionable only if the plaintiff can prove four elements:

"(1) Valuable services were rendered, or materials furnished,

"(2) to the party to be charged,

"(3) which services or materials were accepted, used and enjoyed by the party, and,

"(4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched."

*Silver Dollar Motel, Inc. v. Taylor Electric Company,* 761 P.2d 1006, 1008 (Wyo. 1988) (quoting *Pancratz,* 720 P.2d 906, 908–09 (Wyo.1986)). The issue here is whether the movants carried their burden to show that no genuine issue of material fact existed concerning the presence of one or more of these elements, and, if so, whether Johnson carried his burden to put forth evidence to refute such a showing.

■ Johnson argues that Anderson and/or Puma I were unjustly enriched at

A. For a declaration that plaintiff is entitled to an overriding royalty interest in those properties referred to in Exhibit B and any additional properties to which plaintiff may include in its claim during the course of its litigation.
B. For all provable damages and penalties resulting from defendant's breach and a decree to the extent allowed by law compelling specific performance by defendants under the terms of the agreement.
C. For defendants to provide an accounting for all past royalties received by them, for all wells which have produced or are currently producing oil and gas, and for all leasehold interests obtained or acquired for the period plaintiff was associated with defendants—June 6, 1980, through December 31, 1985.
D. For such further relief as this court may deem proper, including but not limited to costs, interest, attorney's fees and imposition of a constructive trust upon the properties and proceeds from the properties.

his expense concerning assignments of overriding royalties for the undeveloped portion of lease no. W–59239 that Puma II acquired in November 1985. Apparently, Johnson feels that work he performed, while he was a POC employee who received an annual salary of $120,000, was the basis for the acquisition of that portion of lease no. W–59239 and should now be the basis for a contract implied in equity. Johnson suggests that the terms of such an implied contract would entitle him to an assignment of overriding royalties on the undeveloped portion of lease no. W–59239 in a manner consistent with the terms of his 1980 Contract with Anderson. This raises questions about whether valuable services were received by the party to be charged, thereby focusing us on the second element of unjust enrichment set out above.

Anderson carried his initial burden to put forth evidence showing that Johnson could not have expected to receive an assignment of an overriding royalty that was properly assigned to POC after it was originally acquired by Puma II. Anderson was never legally entitled to an assignment of overriding royalties on the undeveloped lands in the lease; in addition, those overriding royalties did not produce any income when Anderson controlled them. Johnson has put forth no evidence to refute that showing and support the idea that a quasi-contract should now be implied between himself and Puma I, the present owner of the controverted overriding royalties. Further, we reiterate the district court's observation that Johnson's pleadings never alleged that Anderson was treating Puma I, Puma II, POC, and Anderson Ltd., as his alter ego. He should not be allowed to implicitly rely on such a theory now. Anderson was not the party to be charged on the overriding royalties in issue and summary judgment for him on Johnson's unjust enrichment claim was proper.

We reach a similar holding for Puma I. Puma I showed that there were no facts suggesting the need to imply an equitable obligation between itself and Johnson concerning the controverted overriding royalties. Puma I also showed that, although Johnson worked for POC when those inter-ests were originally acquired by Puma II in November 1985, he could not have possessed any expectation that either POC or Puma II somehow owed him a direct contractual duty to assign a portion of any overriding royalties they acquired directly to him in addition to his sizeable annual salary. Johnson's entire case is premised upon the assignments he received under the terms of the Contract with Puma I and that Contract expired by its own terms on December 31, 1983. He admits that he ratified POC corporate minutes approving the Puma II partnership agreement which required assignments of overriding royalties acquired by Puma II to be assigned to POC under the POC management agreement. Further, the mistaken POC decision to assign some of those interests back to Anderson and Johnson in an effort to protect POC's subchapter "S" election for federal income tax purposes does not magically grant Johnson an equitable expectation that all of the overriding royalties Puma II owed to POC should be assigned to him. Johnson failed to offer any facts refuting these showings. Summary judgment was proper on this issue for Puma I. Further, without an equitable cause of action against Anderson or Puma I, Johnson had no basis for an unjust enrichment claim against Anderson, Ltd.

Summary judgment is affirmed.