**STATE of Wyoming and Howard M. Schrinar, State Commissioner of Public Lands, Appellants (Defendants),**

v.

**BHP PETROLEUM COMPANY, INC., a Delaware Corporation, Appellee (Plaintiff).**

No. 90–40.

Supreme Court of Wyoming.

Jan. 14, 1991.

Joseph B. Meyer, Atty. Gen., and Vicci M. Colgan, Senior Asst. Atty. Gen., for appellants.

Harold E. Meier of Lonabaugh & Riggs, Sheridan, and Paul F. Hultin, Janet F. Kabili, and David A. Bailey, Denver, Colo., for appellee.

OPINION

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

Appellants State of Wyoming and Howard M. Schrinar, State Commissioner of Public Lands, (the State, collectively) appeal from a summary judgment in favor of Appellee BHP Petroleum Company, Inc., declaring that BHP did not owe interest to the State on underpaid gas royalties which were due to the State.

We affirm.

The State raises the following issue:

[Is the State] entitled, as a matter of law, to interest before the effective date of W.S. 30–5–301 *et seq.* for late royalty payments made by [BHP]?

The parties stipulated to the following facts. BHP has a working interest and the State has a royalty interest in a federal oil and gas unit located in Natrona and Fremont Counties. In January 1987, BHP tendered $428,567.50 in delayed royalty payments to the State for the period of October 1979 through June 1982. BHP also tendered $318,290.25 in interest for delayed payments dating from December 1, 1982, through January 15, 1987. The interest was calculated at the rate of eighteen percent, simple interest. The State accepted the tendered interest payment but objected to the method of calculation.

In addition, the parties acknowledged that the leases and unit operating agreement did not expressly provide for interest on late royalty payments. BHP's affidavits established that it discovered the inadvertent underpayments in the course of an independent audit conducted for a purpose unrelated to the discovery of the royalty underpayments. The State had not brought the underpayments to BHP's attention nor had it made any demands for payment of underpaid royalties.

Upon cross-motions for summary judgment, the district court determined that, pursuant to Wyo.Stat. §§ 30–5–301 and 30–5–303 (1977),[1] the State was entitled to statutory interest for the period subsequent to June 1, 1982, and no issue is raised in this appeal regarding that decision. However, the district court also determined that the State was not entitled to interest on the underpayments for the period of time from the date the payments became overdue until June 1, 1982, and the State appeals that decision.[2]

Since the facts in this case are not in dispute, we must decide whether the district court's decision is correct as a matter of law. *Provence v. Hilltop National Bank*, 780 P.2d 990 (Wyo.1989). The right to interest may emanate from an expressed or implied contract, from a statute, or by way of damages. 45 Am.Jur.2d, *Interest and Usury* § 34 (1969). Because the parties agree the terms of the leases did not provide for interest on late royalty payments and because the legislature did not enact a statute until 1982 granting the right to interest to the State on late royalty payments, the State premises its right to recovery upon the equitable doctrine of unjust enrichment.[3] We have addressed the doctrine of unjust enrichment many times. In *Zitterkopf v. Bradbury*, 783 P.2d 1142 (Wyo.1989), we reiterated that our standard of review in the unjust enrichment/quantum meruit cases places the burden of proof upon the party asserting that theory. Approximately one month before that decision was released, we repeated these tenets of the unjust enrichment doctrine:

> "The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly."

*R.O. Corporation v. John H. Bell Iron Mountain Ranch Company*, 781 P.2d 910, 912 (Wyo.1989) (emphasis omitted) (quoting

---

**1.** These statutes were enacted in 1982 and became effective on June 1, 1982. They were enacted to deal with underpayment situations, such as that at issue here. Section 30–5–301(a) provides:

> The proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in the state of Wyoming shall be paid to all persons legally entitled thereto, except as hereinafter provided, commencing not later than six (6) months after the first day of the month following the date of first sale and thereafter not later than sixty (60) days after the end of the calendar month within which subsequent production is sold, unless other periods or arrangements for the first and subsequent payments are provided for in a valid contract with the person or persons entitled to such proceeds. Payment shall be made directly to the person or persons entitled thereto by the lessee or operator or by any party who assumes such payment obligation under any legal arrangement.

Section 30–5–303(a) provides:

> Any lessee or operator, purchaser or other party legally responsible for payment who violates the provisions of this article is liable to the person or persons legally entitled to proceeds from production for the unpaid amount of such proceeds, plus interest at the rate of eighteen percent (18%) per annum on the unpaid principal balance from the due date specified in W.S. 30–5–301(a).

The interest rate of eighteen percent per annum is a penalty to discourage underpayment of such royalties. 1982 Wyo.Sess.Laws Ch. 27. *See also Independent Producers Marketing Corp. v. Cobb*, 721 P.2d 1106 (Wyo.1986).

**2.** The State demanded seven percent interest per annum for the period of time prior to June 1, 1982, on the basis of our decisions in *O's Gold Seed Company v. United Agri–Products Financial Services, Inc.*, 761 P.2d 673 (Wyo.1988), and *Rissler & McMurry Company v. Atlantic Richfield Company*, 559 P.2d 25 (Wyo.1977).

**3.** "The doctrine of unjust enrichment, or quantum meruit, provides for recovery of damages on a contract implied in equity." *Johnson v. Anderson*, 768 P.2d 18, 25 (Wyo.1989).

66 Am.Jur.2d, *Restitution and Implied Contracts* § 3 at 945 (1973)).

The State principally relies upon the unjust enrichment analysis utilized in *Rissler & McMurry Company v. Atlantic Richfield Company*, 559 P.2d 25 (Wyo.1977). In that case, a statute granting the right to interest to the creditor on unpaid debts did not exist, and the contract between the parties was "silent with respect to interest." *Id.* at 31. Thus, this Court articulated a two-part test for determining the existence of a right to prejudgment interest under the doctrine of unjust enrichment. First, we held that prejudgment "interest is recoverable on liquidated but not on unliquidated claims and that a claim is considered liquidated when it is readily computable by simple mathematical computation." *Id.* Second, we stated that the "debtor must receive notice of the amount due before interest starts to run." *Id.* at 34.[4] The *Rissler & McMurry Company* court based its decision upon the principle that a debtor, who holds money which it should have yielded to a creditor, is unjustly enriched because the use of money has real economic value. *Id.*

While this case does not involve prejudgment interest, it does involve facts sufficiently analogous to those in *Rissler & McMurry Company* to trigger application of the *Rissler & McMurry Company* test. We hold that the State is not entitled to interest on the delayed royalty payments for the period of October 1979 through June 1982. The State concedes that BHP did not discover the deficiency in royalty payments until 1987 and that BHP promptly compensated the State for those underpayments. Although BHP may have been enriched by its failure to pay royalties when they became due, it was not unjustly enriched since it did not withhold payment

after learning that the deficiency existed. Hence, interest did not start to run.

Affirmed.

URBIGKIT, C.J., and THOMAS, J., filed dissenting opinions.

URBIGKIT, Chief Justice, dissenting.

This appeal in essential components has simple parts. From 1979 to 1987, appellee BHP Petroleum Company, Inc., oil and gas lessee, failed to pay contractual royalty obligations for gas production to the State of Wyoming as lessor. Constitutional trust funds from school lands were involved under the provisions of Wyo.Const. art. 18. With an eight year delay in royalty payments due to the State of Wyoming finally satisfied by a January 1987 payment of $428,567.50, the debtor also recognized an interest payment obligation to the state under W.S. 30–5–301 through 30–5–303, first effective June 1, 1982, but no obligation for interest on the retained state land funds for two plus years prior to passage of the Stroock/Urbigkit Oil Royalties Non–Payment Act, Wyo.Sess.Laws ch. 27 (1982).[1] The real issue presented is whether delayed contractual payment of state trust funds constituting oil and gas lease proceeds would have always remained interest free if the enforcement statute, W.S. 30–5–301 through 30–5–303, had never been enacted.

It is recognized that the state-phrased resistance to absolution of oil producers responsibility for retention and use of state funds speaks to an unjust enrichment concept. In particular, since we deal here with constitutionally obligated funds, I present the issue of right of a government as identical with private parties to collect statutory interest on debts due and unpaid as the price of retention where the contract makes no specific provision for a deficiency

---

**4.** The *Rissler & McMurry Company* court held that, absent an agreement specifying the applicable interest rate, the interest on liquidated claims would be seven percent per annum pursuant to the predecessor of Wyo.Stat. § 40–14–106(e) (1977). *Rissler & McMurry Company,* 559 P.2d 25.

**1.** The provisions of Wyo.Sess.Laws ch. 27 (1982), effective June 1, 1982, are not at issue in this appeal. Rather, the question is what obligations for interest, if any, did the defaulting lessee have before the 1982 passage of the punitive eighteen percent interest statute. See, for a discussion of the statute, *Independent Producers Marketing Corp. v. Cobb,* 721 P.2d 1106 (Wyo. 1986).

interest accrual. It is my conclusion that when the money is a liquidated sum, from the date due, interest is accrued equally for a governmental entity as would be for any private entity. It would then logically follow that the State's brief and the consequent discussion in this court's opinion is converted into a non-issue since government should equally be accorded the statutory right to interest on unpaid debts to it. Within that concept, neither a demand requirement nor unjust enrichment ideology has preclusive relevancy.[2]

Realistically, resolution of this obligation of the oil producer which was delinquent in payment of the school land royalties to the state for the period before the penalty interest statute was enacted should have been determinable by answering three questions:

1. Does Wyoming have an interest statute which is applied to unpaid liquidated obligations?

2. Do governmental entities, including the state, share in the benefit of that interest rate statute?

3. Was the oil and gas leasehold obligation a liquidated amount in this case?

Ancillary to these questions is the suggestion derived from *Rissler & McMurry Co. v. Atlantic Richfield Co.*, 559 P.2d 25 (Wyo.1977) that application of the interest statute is first dependent upon demand by the payee. *See however Goodwin v. Upper Crust of Wyoming, Inc.*, 624 P.2d 1192, 1198 (Wyo.1981) and *Northern Gas Co. v. Town of Sinclair*, 592 P.2d 1138 (Wyo.1979).

Answering the first question requires reconstruction of Wyoming history since obviously there is a general interest statute, albeit emplaced within the Uniform Commercial Code as W.S. 40–14–106(e): "If there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of seven percent (7%) per annum."

That section came into the Wyoming code by a provision in Wyo.Sess.Laws ch. 191, § 9–103 (1971) which provided:

(2) Section 13–477, Wyoming Statutes 1957, Compiled 1965, is amended and reenacted to read as follows:

If there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of seven per cent per annum.

The quoted language came into the current law as W.S. 40–9–103 (1975 Cum.Supp.) (and now W.S. 40–14–106(e)) as recited in *Rissler & McMurry Co.*, 559 P.2d at 31–32 (footnote omitted):

Section 13–477, W.S.1957, C.1965, in 1970, provided as follows:

"Interest upon the loan or forbearance of money, goods or things in action, shall be at the rate of seven per cent. per annum, unless a greater rate, not exceeding ten per cent. per annum, be contracted for by the parties."

By § 9–103, Ch. 191, Session Laws of Wyoming, 1971, that section was amended to read as follows:

"If there is no agreement or provision of law for a different rate, the interest of [sic] money shall be at the rate of seven percent per annum."

The same words appear also as § 40–9–103, W.S.1957, 1975 Cum.Supp., as part of the Wyoming Uniform Consumer Credit Code. As far as this case is concerned, the law has not changed. The interest rate is adopted only as a convenient measure of damage for loss of use of money and recognizes the legislative view that money has value beyond its intrinsic worth.

None of the Wyoming cases which have been cited clearly particularized that the statute is incorporated as a matter of law in all contracts or whether, where allowed as a part of recovery, interest is added as an item of damages for breach of contract in failure to pay a just claim when due. In any event, the statutory interest has been used only as the standard for the rate of interest al-

---

**2.** It is of interest to recognize that the state school land sale statute, W.S. 36–9–107, provides a delinquency provision of eight percent per year on all amounts not paid when due.

lowed, when the court has determined the amount due is liquidated. Regardless of whether interest is agreed upon in advance or the statutory rate is applied, it constitutes a penalty for failure to pay over money when due.

Not only *Rissler & McMurry Co.,* but the subsequent case, *Northern Gas Co.,* and the group of even more recent cases[3] establish that where contractual obligations exist establishing liquidated amounts to be paid with no specific provision for interest computation, the payee is entitled to seven percent interest under what is now W.S. 40–14–106(e) as a general liquidated claim interest statute. The rule for interest entitlement was recently stated in *O's Gold Seed Co. v. United Agri–Products Financial Services, Inc.,* 761 P.2d 673, 677 (Wyo.1988):

> Prejudgment interest is recoverable in Wyoming on liquidated claims but not on unliquidated claims, with a liquidated claim being defined as one that is readily computable by basic mathematical calculation. *Holst v. Guynn,* 696 P.2d 632 (Wyo.1985); [*State Highway Com'n v.*] *Brasel & Sims Construction Co., Inc.,* 688 P.2d 871 [Wyo.1984]. We have established that, in the absence of a contractual provision to be contrary, W.S. 40–14–106(e) is applicable in determining the rate of prejudgment interest to be awarded. *Holst,* 696 P.2d 632; *Rissler & McMurry Company v. Atlantic Richfield Company,* 559 P.2d 25 (Wyo.1977). W.S. 40–14–106(e) provides:
>
> > "If there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of seven percent (7%) per annum."

*See also Miles v. CEC Homes, Inc.,* 753 P.2d 1021, 1028 (Wyo.1988).

These cases preserve the heritage of Wyoming law predating the 1971 passage of the Uniform Commercial Code including W.S. 13–478 (1957) relating to interest on judgments now found in W.S. 1–16–102 and W.S. 13–479 (1957) from which the present liquidated debt interest statute, W.S. 40–14–106(e), was derived. In actual result, the 1971 Uniform Commercial Code renovation of Wyoming interest statutes removed the usury limitation of ten percent interest earlier emplaced in W.S. 13–477 (1957) and then continued the provisions of W.S. 13–479 (1957) where no provision establishing an interest rate existed in the agreement between the parties. Clearly, Wyoming now has a historically continued general interest statute at a seven percent rate applicable to liquidated obligations for which no agreement determining a higher rate of interest is provided.

The second inquiry is whether Wyoming's interest case law and the present W.S. 40–14–106 provisions equally apply to governmental entities as otherwise applied to private individuals and business concerns. That subject is settled by *Northern Gas Co.,* 592 P.2d 1138, where Justice Thomas, writing for the court, specifically applied the *Rissler & McMurry Co.* interest entitlement for liquidated obligations to the benefit of the governmental entity, the Town of Sinclair. It is additionally noted that neither the litigant nor the majority provide argument or authority that interest entitlement under W.S. 40–14–106 does not reach obligations owed to the state's governmental entities.

We then examine within the third question for any application of the interest statute whether a liquidated indebtedness exists here. A definition of liquidated debt has been frequently and consistently restated by this court:

> This court has spoken frequently about the prerequisites to recovery of prejudgment interest and holds with the majority of courts that interest is recoverable on liquidated but not on unliquidated claims and that a claim is considered liquidated when it is readily computable by simple mathematical computation. *Zitterkopf v. Roussalis,* Wyo.1976, 546 P.2d 436; *Mader v. James,* Wyo.1976, 546 P.2d 190; *Chandler–Simpson, Inc. v. Gorrell,*

---

**3.** *Bueno v. CF & I Steel Corp.,* 773 P.2d 937 (Wyo.1989); *O's Gold Seed Co. v. United Agri–Products Financial Services, Inc.,* 761 P.2d 673, 677 (Wyo.1988); *Miles v. CEC Homes, Inc.,* 753 P.2d 1021, 1028 (Wyo.1988); *Goodwin,* 624 P.2d 1192.

Wyo.1970, 464 P.2d 849, 853 (see Wyoming cases there cited); *United Pacific Insurance Company v. Martin and Luther General Contracts, Incorporated,* Wyo.1969, 455 P.2d 664; *Leet v. Joder,* 1956, 75 Wyo. 225, 295 P.2d 733. See also *Wyoming Construction Company v. Western Casualty and Surety Company,* 10 Cir.1960, 275 F.2d 97, cert. den., 362 U.S. 976, 80 S.Ct. 1061, 4 L.Ed.2d 1011, allowing recovery of interest on a claim decided on the basis of Wyoming law.

*Rissler & McMurry Co.,* 559 P.2d at 31. See likewise *Bueno v. CF & I Steel Corp.,* 773 P.2d 937 (Wyo.1989) reciting the same test.

In this case, the royalty was to be computed by terms of the Wyoming oil and gas lease at a one-eighth (12½%) of production. What the record reflects is that from commencement of production on October 1979 until November 1981, BHP Petroleum paid *no part of the one-eighth royalty* and then for the next seven months, paid part, to accumulate the readily computed total of $428,567.50 which then was only paid in January 1987. Obviously, oil royalty fits within a liquidated obligation definition which was coincidentally the whole premise of the eighteen percent penalty provision introduced into the 1982 enactment of the Unpaid Royalty Act statute. *Bueno,* 773 P.2d at 940 teaches that "[m]athematical computability is the criterium for a liquidated claim."[4] *Holst v. Guynn,* 696 P.2d 632 (Wyo.1985); *Goodwin,* 624 P.2d at 1198. The Wyoming rule is similar to a more detailed statement in Arizona law, *Homes & Sons Const. Co., Inc. v. Bolo Corp.,* 22 Ariz.App. 303, 526 P.2d 1258, 1261 (1974) (quoting *Arizona Title Insurance & T. Co. v. O'Malley Lbr. Co.,* 14 Ariz.App. 486, 496, 484 P.2d 639, 649 (1971)), providing "the definition that a claim is liquidated 'if the evidence furnishes data which, if believed, makes it possible

to compute the amount with exactness, without reliance upon opinion or discretion.'" Mathematical computability from undisputed records establishes the liquidated nature of the obligation. *Bueno,* 773 P.2d at 940.

The ancillary question of required demand for interest accrual exculpated from *Rissler & McMurry Co.* is specifically settled by the further analysis on the subject provided in *Northern Gas Co.,* 592 P.2d at 1143:

The real question is whether Northern Gas Company should be excused by the indication in *Rissler & McMurry Company v. Atlantic Richfield Co., supra,* that notice of the amount due must be furnished before the interest will start to run. The record is clear that the information with respect to the natural gas sales always was available to Northern Gas Company. Northern Gas Company informed the Town of Sinclair of the amount of gross revenue at the time that it paid the franchise fee provided for in Section 6 of Ordinance No. 112. As between the two parties, Northern Gas Company had the information needed to compute the franchise fee, and the Town of Sinclair had to obtain the information from Northern Gas Company even for purposes of this litigation. Since the thrust of the caveat found in *Rissler & McMurry Company* is that a defendant should not be held in default if he has not been informed of what to pay, it need not be applied in this case. In this instance there would be no necessity for the Town of Sinclair to inform Northern Gas Company of what it should pay because Northern Gas Company, had it followed the terms of the contract, would have known the correct amount which was due.

*Goodwin,* 624 P.2d at 1198, in analysis of both *Rissler & McMurry Co.* and *North-*

---

**4.** Statements in trial hearing and briefing that nonpayment of the landowner's royalty of $428,567.50 over thirty-three months was just an "inadvertent miscalculation" belies belief and requires multiplexed factual blinders for logical review. Actually, contrary to those statements,

it was not "miscalculation", except for the last seven months involving about $14,000, it was twenty-six months of total nonpayment of the leasehold royalty obligation constituting the lessor/landowner's twelve and one-half percent entitlement.

*ern Gas Co.*, recognized for the lessee obligation:

> From the language in these two cases, it is clear that notice was not necessary to start the interest running in this case. Appellants knew that if they paid the rent due under the sublease agreement that interest would thereby be stopped. They did not need notice from appellees informing them of the amount due.
>
> Appellees were entitled to the use of the money they were to receive under the agreement from the date it became due. The use of money has real economic value, particularly in the current economy of inflation and high interest rates of which we take judicial notice. Appellees were deprived of that benefit. Prejudgment interest should have been awarded as an attempt to compensate for that loss. Since the amount due under the contract was at all times readily computable, appellants should be charged with the statutory rate of interest on all the unpaid rents from the date each became due. We must remand to the district court to modify its judgment accordingly.

Succinctly, BHP Petroleum produced the gas from state school lands and failed, neglected or refused to file correct reports or pay royalties to the landowner, the State of Wyoming. To summarize, a liquidated obligation was created, it was not paid when due, for which reason payee under W.S. 40–14–106(e) should, in addition to the late payment, be obligated for the statutory rate of seven percent interest commencing October 1979 and continuing until the penal interest statute applied a much higher eighteen percent interest, so that the State would be properly compensated for about $4.9 million in gas sales for which it had a royalty entitlement of twelve and one-half percent totaling $480,946 of which

it was only promptly and properly paid $52,379.[5]

I would reverse and remand for assessment of interest on withheld royalty payments accrued from monthly leasehold production between October 1979 and June 1982.

THOMAS, Justice, dissenting.

I am not in agreement with the result reached by the majority opinion, nor the justification offered for it in this case, and I dissent. I view the case a bit differently from the analysis offered by the Chief Justice in his dissenting opinion, although I am completely satisfied that *Northern Gas Co. v. Town of Sinclair*, 592 P.2d 1138 (Wyo. 1979), just as the Chief Justice explains, does dispense with the requirement of notice by the State of Wyoming to BHP Petroleum Company, Inc. in order to recover interest in this instance. It is painfully clear that, since BHP Petroleum Company Inc. was marketing the gas, knew the amount that it had received for it, and knew the amount it was to pay to the State of Wyoming under its leases, there is no more necessity for the State of Wyoming to inform BHP Petroleum Company, Inc. of its duties than there was for the Town of Sinclair to similarly inform Northern Gas Company. BHP Petroleum Company, Inc. had those facts at its command.

There is no dispute that interest generally may be claimed by virtue of a contract to pay interest, by virtue of a statute providing for interest, or by way of damages. *See* cases cited in 45 Am.Jur.2d *Interest and Usury* § 34 (1969); 47 C.J.S. *Interest and Usury* § 6 (1982). It seems to me that the parties, the majority, and the Chief Justice have not recognized the proposition that our Wyoming cases, *e.g., O's Gold*

---

5. The amount involved in this appeal has never been computed within this record, but it is obviously something less than the original claim of the State as added interest of about $79,000. The difference, in part, is the result of the district court's decision to impress the penalty interest at an earlier date than the oil company had desired. Apparently, the contested amount for this appeal is in the general range of about $40,000 based on an approximated computation

by averaged total. It is not the dollar amount involved in this case, but a general application to protect governmental revenues that is important. Legislative vigilance and protective enactments are invited, if not required. Non-penalty retention of money results in delayed, if not total, nonpayment. That is just a matter of "good business" without payment of the rental cost—interest.

*Seed Co. v. United Agri–Products Financial Services, Inc.,* 761 P.2d 673 (Wyo. 1988); *Miles v. C.E.C. Homes, Inc.,* 753 P.2d 1021 (Wyo.1988); *Bueno v. C.F. & I. Steel Corporation,* 773 P.2d 937 (Wyo. 1989); *Goodwin v. Upper Crust of Wyoming, Inc.,* 624 P.2d 1192 (Wyo.1981); *Northern; Rissler & McMurry Co. v. Atlantic Richfield Co.,* 559 P.2d 25 (Wyo. 1977), all involve situations in which interest was claimed by way of damages for breach of contract. The statute was invoked only to establish the rate of interest, and none of those cases appear to rely upon an express or implied agreement to pay interest.

Neither does the State of Wyoming apparently rely upon either an express or implied agreement to pay interest. In relying upon *Rissler,* the State of Wyoming is invoking its right to recover interest as damages. As damages, the right to interest encounters the quaint rule that interest recoverable as damages does not constitute a distinct claim and can only be recovered in an action brought to recover the principal. This rule leads to a denial of interest as a separate claim after payment has been made. *See* cases cited in 25 C.J.S. *Damages* § 52, 793–94, nn. 91–93 (1966). This rule is not without its exceptions, however, and interest generally will be allowed for its detention when money belonging to another is not paid over to the person entitled to receive it at the time it should be paid. *See* cases cited under 25 C.J.S. *Damages* § 52, n. 80 (1966). There does seem to be a general accord that concepts of equity, which the State of Wyoming really argues here, may require that interest be paid in order to do justice.

That is how I see this case. While the allowance of interest may well be a matter of discretion with the trial court, given the situation in which BHP Petroleum Company, Inc. had the exclusive knowledge of the receipt of the monies, knew of its duty to pay them monthly to the State of Wyoming, presumably utilized the money in the operations of its own business, and did not pay them over for several years, justice should require the payment of interest for the detention of these monies. I recognize that the reason for non-payment was inadvertence on the part of BHP Petroleum Company, Inc. That fact does not lead to a conclusion that BHP Petroleum Company, Inc.'s use of the state money was just. Certainly, it does not serve to justify a decision that does not award interest for the period prior to the statute. In my view, the trial court did abuse its discretion in the failure to award interest in this case for the period of time prior to December 1, 1982, and I would reverse that aspect of the trial court's decision.